**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| SOURCE PANEL SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BALFOUR BEATTY CONSTRUCTION, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>Defendants. | CIVIL ACTION NO.: 4:25-cv-242 |

**O R D E R**

This case emerges from an ongoing contractual dispute regarding payment for construction work. Plaintiff Source Panel Solutions, LLC, is a North Carolina limited liability company operating out of Georgia. (Doc. 1.) Defendants consist of the following: Balfour Beatty Construction, LLC ("Balfour Beatty"), a Delaware corporation, and Travelers Casualty and Surety Company of America ("Travelers"), a Connecticut surety corporation. (Id. at p. 2.) Before the Court is Defendants' Partial Motion to Dismiss. (Doc. 9.) Plaintiff filed a Response in opposition to Defendants' Motion, (doc. 19), and Defendants filed a Reply, (doc. 22). While Defendants' Motion was pending, Plaintiff's attorney filed a Motion to Withdraw as Attorney, (doc. 35), which was granted, (doc. 36). Plaintiff's new attorney filed a Sur-Reply opposing Defendants' Motion. (Doc. 33.)[1] For the reasons below, Defendants' Motion is **GRANTED in part** and **DENIED in part**. (Doc. 9.)

[1] Defendants oppose the consideration of Plaintiff's Sur-Reply, arguing that it is untimely under Local Rule 7.6. (Doc. 32.) Under Local Rule 7.6, reply briefs must be served and filed within fourteen days of service of the opposing party's last brief. Defendants' last brief was filed on December 12,

**BACKGROUND**

Defendant Balfour Beatty contracted with non-party 601 East River Street, LLC (the "Owner") for the construction of the AC Hotel Savannah Riverfront project in Chatham County, Georgia (the "Project"). (Doc. 1, p. 2; doc. 9-1, p. 1.) Plaintiff and Balfour Beatty subsequently entered into a subcontract whereby Plaintiff would provide construction labor and materials for the Project (the "Subcontract"). (Doc. 1, pp. 1, 3.) Plaintiff was tasked with performing exterior cladding system work on the Project and was responsible for manufacturing and delivering panels that met specified standards. (Id. at p. 3; see generally doc. 1-1.) Under the Subcontract, Balfour Beatty was to compensate Plaintiff through incremental "progress payments," which became due once Balfour Beatty received payment from Owner. (Doc. 1-1, p. 3.)

To receive progress payments for work performed, Plaintiff was required to submit payment applications along with other required documentation as outlined in Article 2 of the Subcontract. (Id.) Importantly, Plaintiff was also required to deliver "all final lien and claim waiver forms" as a condition precedent to Balfour Beatty's duty to pay. (Id.) Among these required waiver forms was an "executed Partial Waiver and Release Upon Progress Payment"

2025, (doc. 22), and Plaintiff's Sur-Reply was not filed until June 5, 2026, (doc. 33). However, Local Rule 7.6 exists for the Court's benefit and not as a "sword to have a brief stricken." Harrell v. Batten, No. 5:24-cv-74, 2026 WL 458299, at *4 n.7 (S.D. Ga. Feb. 18, 2026) (internal quotations omitted). As such, the Court may consider supplemental briefs filed in violation of the notice and timing provisions of the Rule. Id. The Court sees no reason to disregard Plaintiff's Sur-Reply on timeliness grounds, especially given that the delay in filing was due to the appearance of new counsel rather than any inexcusable neglect. Further, there is no indication that the Court's consideration of Plaintiff's Sur-Reply would prejudice Defendants, particularly given that Defendants were free to file their own sur-reply in response. See Royal v. N.Y. Life Ins. Co., No. 6:10-cv-104, 2015 WL 339781, at *5 (S.D. Ga. Jan. 26, 2015) (plaintiff's sur-reply did "not necessarily prejudice Defendants, as they were free to notice their intent to file an additional sur[-]reply"); see also Kerns v. Sealy, 496 F. Supp. 2d 1306, 1310 n.5 (S.D. Ala. 2007) (courts may consider an untimely sur-reply where "no conceivable prejudice" to the other party would result). As such, Plaintiff's Sur-Reply will be considered by the Court in ruling on Defendant's Motion.

in the form attached as Exhibit F to the Subcontract (the "Waiver"). (Id. at pp. 3, 56–67.) The Waiver states that, upon Plaintiff's acceptance of payment, it "becomes effective pursuant to which [Plaintiff] hereby waives, releases and relinquishes any and all claims for payment for Work performed, rendered, supplied or furnished by [Plaintiff] for or with respect to the Project" through a specified period corresponding to the work for which payment is requested (the "Release Period"). (Id. at p. 58.) The Waiver further provides that Plaintiff waives all claims for "extended or additional job costs and overhead, lost profits, impact costs . . . as well as claims and demands arising from any contended delays, disruptions or changes to the Work, except with regard to retainage amounts . . . ." (Id.) Compensation for "extra work" is permitted "only to the extent such extra work is specifically identified" by the Waiver. (Id.)

Upon its completion of the work under the Subcontract, Plaintiff submitted three final payment applications to Balfour Beatty.[2] (Doc. 1, pp. 3–4.) Payment Application 16, seeking $92,418.46 for work performed through January 31, 2025, was submitted on March 24, 2025. (Id. at p. 3.) Payment Application 17, seeking $56,454.38 for work performed through February 28, 2025, was submitted on March 31, 2025. (Id. at p. 4.) Payment Application 18, seeking $185,909 as retainage for work performed through June 30, 2025, was submitted on July 1, 2025.[3] (Id.) Balfour Beatty did not pay these requested amounts for several months and provided no explanation for its non-payment. (Id.)

---

[2] Plaintiff had submitted these Payment Applications previously, but they had been rejected by Balfour Beatty without explanation. (Doc. 1, pp. 3–4.)

[3] "Retainage" refers to a percentage of what the owner of a construction project pays a contractor, withheld until the contractor's work has been satisfactorily completed and all mechanic's liens are released or have expired. *Retainage*, BLACK'S LAW DICTIONARY (12th ed. 2024). Here, retainage consists of amounts withheld from each interim progress payment which are to be later paid to Plaintiff provided that Plaintiff is not in default. (Doc. 1-1, p. 3; doc. 9-1, p. 7 n.5.) Defendants contend that Plaintiff's request for retainage constitutes a claim that Plaintiff completed its scope of

On September 19, 2025, Balfour Beatty paid Plaintiff $148,872.84 for Payment Applications 16 and 17. (Id. at p. 5.) On September 23, 2025, Balfour Beatty paid Plaintiff $147,448 for undisputed change order work and/or work related to repairing and replacing panels that were damaged by Balfour Beatty or its subcontractors. (Id. at p. 6.) Payment Application 18 remains unpaid, however, and Plaintiff also claims to have incurred the following costs and damages which have not been compensated: an outstanding retainage cost of $185,909; costs for change orders not received totaling $198,662.99; costs for damaged panel change orders totaling $183,529.49; "Extended General Conditions" damages totaling $431,000; and damages for panel storage and related costs totaling $36,000. (Id.) Additionally, Plaintiff seeks to recover interest on all late payments. (Id. at p. 5.)

Plaintiff further alleges that, along with its refusal to pay the above amounts, Balfour Beatty engaged in bad faith conduct to manipulate and coerce Plaintiff. (Id. at pp. 7–8.) Balfour Beatty tried to "obtain overbroad waivers and lien releases . . . to get [Plaintiff] to agree to the concession of backcharges that it would otherwise not agree to." (Id. at p. 7.) Balfour Beatty continuously failed to address issues with required project documentation—including documentation related to processing and reviewing payment applications and requests for information. (Id. at p. 8.) Balfour Beatty also failed to perform necessary scheduling functions, failed to properly monitor and supervise the work of its various subcontractors or properly coordinate the Project's work among the various trades, refused to acknowledge extra work performed, and failed to adequately process change order requests. (Id. at pp. 8–9.) Because of these alleged failures, Plaintiff incurred additional costs and damages. (Id.)

---

work under the Subcontract prior to February 28, 2025, the Release Period for Payment Application 17.

Following these and other alleged misdeeds, Plaintiff sued Defendants. Plaintiff asserts six causes of action against Balfour Beatty: breach of contract (Count I), quantum meruit (Count II), bond foreclosure (Count III), violation of the Georgia Prompt Payment Act (Count IV), breach of the implied covenant of good faith and fair dealing (Count V), and bad faith and stubborn litigiousness (Count VI). (Id. at pp. 10–24.) Plaintiff further alleges that Travelers posted, as surety, a bond to discharge lien and is therefore liable under Count III. (Id. at p. 15.) Plaintiff seeks damages covering its unpaid retainage, all outstanding change orders, damaged panels and change orders, and all extended overhead costs. (Id. at pp. 24–25.) Plaintiff also seeks interest on all late and unprocessed payments submitted by Balfour Beatty as well as on all other unpaid amounts as permitted by law. (Id. at pp. 25–26.) Under Count IV, Plaintiff further seeks attorney's fees and interest at 1% monthly pursuant to the Georgia Prompt Payment Act. (Id. at p. 27.)

Defendants now move for partial dismissal, arguing that Counts I, II, IV, and V fail to state claims upon which relief may be granted. (Docs. 9 & 9-1.) Defendants contend that Plaintiff's Complaint "goes well beyond the bounds" of the parties' dispute and attempts to recover damages through its claims for breach of contract and quantum meruit which Plaintiff expressly waived in writing. (Doc. 9-1, p. 2.) Plaintiff has filed both a Response, (doc. 19), and a Sur-Reply, (doc. 33), opposing Defendants' Partial Motion to Dismiss, (doc. 9).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted). Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

## DISCUSSION

### I. Plaintiff's Claim for Breach of Contract (Count I)

Count I alleges that "Defendant Balfour Beatty breached the Subcontract by failing to pay the full amounts due to Plaintiff." (Doc. 1, p. 10.) Defendants argue that Count I should be dismissed—either partially or in its entirety—because Plaintiff has failed to identify the particular contractual provisions allegedly breached by Balfour Beatty and because Plaintiff is barred from recovering the majority of its contractual claims by the express terms of its executed Waiver. (Doc. 9-1, pp. 5–7.) The Court addresses each argument in turn.

**A. Whether Plaintiff Pled Count I With Sufficient Particularity**

"To state a claim for breach of contract in Georgia, plaintiffs must allege: (1) the breach and (2) resulting damages (3) to the party who has the right to complain about the contract being broken." Beckman v. Regina Caeli, Inc., 752 F. Supp. 3d 1346, 1378 (N.D. Ga. 2024) (citing Norton v. Budget Rent A Car Sys., Inc., 705 S.E.2d 305, 306 (Ga. Ct. App. 2010)). Defendants aver that the first element has not been met here, arguing that Plaintiff's breach of contract claim fails as a matter of law because Plaintiff "has failed to identify any specific contractual provision Balfour allegedly breached—in particular, [Plaintiff] fails to identify the provisions of the [Subcontract] that entitle it to the specific cost items [Plaintiff] seeks . . . as damages." (Doc. 9-1, pp. 5–6.) Plaintiff did not address this argument in its original Response. (See generally doc. 19.) However, Plaintiff contends in its Sur-Reply that it has sufficiently identified the contractual provisions breached by Balfour Beatty. (Doc. 33, pp. 5–6.) Plaintiff notes that it has attached the Subcontract to the Complaint and has alleged that Balfour Beatty breached that agreement by "failing to timely pay [Plaintiff] amounts owed under the Subcontract, falsely asserting back charges in order to reduce the amount owed to [Plaintiff], failing to pay undisputed amounts [Balfour Beatty] owed to

[Plaintiff], failing to pay for extra work, and failing to pay retainage owed under the Subcontract." (Id. at p. 5 (citing doc. 1 at pp. 4–7).) As such, Plaintiff avers that Defendants are aware of the nature of its claims and the ways in which they are alleged to have breached the Subcontract. (Id.) Plaintiff argues that this is all that is required to adequately plead a breach of contract claim, rejecting Defendants' imposition of a "heightened pleading requirement" as a misstatement of the law. (Id. at p. 6.)

The Eleventh Circuit Court of Appeals recently addressed the pleading requirements for a breach of contract claim in Caterpillar Financial Services Corp. v. Venequip Machinery Sales Corp., 147 F.4th 1341 (11th Cir. 2025). On appeal was the district court's dismissal of a breach of contract claim for failure to identify the specific contractual provision that had allegedly been breached. Id. at 1345–46. In reversing the district court's dismissal, the Eleventh Circuit observed that federal law does not "impose[] this kind of heightened pleading obligation on a breach of contract plaintiff," but instead requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 1348 (internal quotations and citations omitted). "Put another way, 'we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A breach of contract plaintiff must therefore "make a plausible allegation that the defendant did not perform as promised," but it "need not allege anything with particularity." Id.

Here, Plaintiff claims that Balfour Beatty breached the Subcontract by allegedly withholding payment despite Plaintiff's full performance. (Doc. 1, pp. 10–11.) Plaintiff alleges that the parties agreed that Plaintiff would be paid for its labor, materials, and services furnished for the Project. (Id. at p. 10.) The Complaint includes both the specific amounts

which Balfour Beatty allegedly owes under the terms of the Subcontract as well as the invoices that Plaintiff allegedly sent to Balfour Beatty, and alleges that Balfour Beatty refuses to pay these amounts. (Id. at pp. 3–4, 10.) Additionally, Plaintiff attached the Subcontract to the Complaint, (doc. 1-1), such that the provisions of the Subcontract are incorporated into the Complaint. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1205–06 (11th Cir. 2007) (exhibits attached to the complaint may be considered on a Rule 12(b)(6) motion and are considered part of the complaint). Article 2 of the Subcontract ("Payments to Subcontractor") covers the terms related to payment in extensive detail, including Plaintiff's responsibilities in submitting payment applications and the conditions triggering Balfour Beatty's obligations to pay. (Doc. 1-1, p. 3.) Plaintiff alleges that it performed all work in accordance with the Subcontract and submitted payment applications as required under Article 2, but Balfour Beatty wrongfully withheld payment in bad faith and without explanation. (See doc. 1, pp. 3–11.) These factual allegations are enough to plausibly allege that Balfour Beatty breached the Subcontract, which is all that is required at this stage. While the Complaint does not cite a specific provision of the Subcontract that Balfour Beatty allegedly breached, it is not required to do so. Caterpillar Fin. Servs. Corp., 147 F.4th at 1348. The Court thus denies Defendants' request to dismiss Count I on that ground.

**B. Whether Count I is Barred by Plaintiff's Waiver**

Defendants argue that "the Complaint demonstrates as a matter of law that Plaintiff waived the bulk of its contractual damages claim." (Doc. 9-1, p. 6.) Defendants note that when Plaintiff submitted Payment Application 17, it "*also* submitted a signed Waiver in which [it] expressly waived entitlement *to any costs other than retainage* through February 28, 2025," including any costs for extra work, overhead, additional job costs, and "impact

costs." (Id. at pp. 6–7.) Defendants further note that "Plaintiff had previously waived claims through January 31, 2025." (Id. at p. 7 n.3 (citing doc. 9-2).) Defendants aver that, "[a]ccordingly, Count I should at a minimum be limited to Plaintiff's claim for unpaid retainage, but otherwise dismissed." (Id. at p. 7.)

In its Sur-Reply, Plaintiff argues that Defendants may not predicate their Partial Motion to Dismiss on an alleged waiver. (Doc. 33, pp. 6–7.) Waiver and release are listed as affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure and, "generally, the existence of an affirmative defense will not support a motion to dismiss." Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP, 609 F. App'x 972, 976 (11th Cir. 2015) (quoting Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984)) (alterations adopted). This is because "[a] plaintiff is not required to negate an affirmative defense in its complaint." Id. (internal quotations omitted).

Defendants acknowledge this general rule and concede that "waiver is often a jury question," but they note that "when 'the facts and circumstances essential to the waiver issue are clearly established, waiver becomes a question of law.'" (Doc. 9-1, p. 9 (quoting Vratsinas Constr. Co. v. Triad Drywall, LLC, 739 S.E.2d 493, 496 (Ga. Ct. App. 2013)).) A complaint may be dismissed pursuant to an affirmative defense when the existence of the defense "clearly appears on the face of the complaint." Twin City Fire Ins., 609 F. App'x at 976 (quoting Quiller, 727 F.2d at 1069). The plaintiff's "own allegations [must] show that the defense exists" such that its claim "has a built-in defense and is essentially self-defeating." Quiller, 727 F.2d at 1069 (internal citations omitted). The "face of the complaint" includes not only the complaint itself, but also any documents attached to the complaint or incorporated into the complaint by reference. Brown v. One Beacon Ins. Co., 317 F. App'x

915, 916–17 (11th Cir. 2009) (in determining whether an affirmative defense "clearly appears on the face of the complaint," courts "may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss [that] are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment.").

According to Defendants, Plaintiff's waiver of the bulk of its contractual damages claim is clearly established here through the express language of the executed waivers and the Subcontract itself. (Doc. 9-1, pp. 6–7.) As discussed above, the Subcontract expressly states that Plaintiff must deliver "all final lien and claim waivers" including the Waiver as outlined in Exhibit F, as a condition precedent to Balfour Beatty's duty to make progress payments. (Doc. 1-1, p. 3.) The Waiver provides that Plaintiff, upon acceptance of payment, "waives, releases and relinquishes any and all claims for payment for work performed, rendered, supplied or furnished by [Plaintiff] for or with respect to the Project" through the stated Release Period. (Id. at p. 58.) As Defendants note, the Waiver further states that Plaintiff waives all claims for "extended or additional job costs and overhead, lost profits, impact costs . . . as well as claims and demands arising from any contended delays, disruptions or changes to the Work, except with regard to retainage amounts . . . ." (Id.) Defendants have also attached Payment Applications 16 and 17 to their Motion to Dismiss; these include the signed waivers executed by Plaintiff. (Doc. 9-2, pp. 6–9; doc 9-3, pp. 6–9.)[4]

---

[4] When ruling on a motion to dismiss under Rule 12(b)(6), the Court typically confines itself to the complaint and any documents attached thereto. Baker v. City of Madison, 67 F.4th 1268, 1276 (11th Cir. 2023). However, under the Eleventh Circuit's "incorporation by reference" doctrine, the Court may also consider documents attached to the motion to dismiss if they are "(1) central to the plaintiff's claims; and (2) undisputed." Johnson v. City of Atlanta, 107 F.4th 1292, 1300 (11th Cir. 2024). Payment Applications 16 and 17, which are referred to extensively in the Complaint, are central to

In its Sur-Reply, Plaintiff avers that the alleged waivers must be considered alongside the parties' contemporaneous writings and overall conduct throughout the course of the dispute. (See doc. 33, pp. 7–10.) Plaintiff argues that, when viewed in this broader context, it becomes clear that the waivers were not intended as a release of the claims asserted in the Complaint and that the Complaint asserts claims which are "outside the scope" of any release. (Id. at p. 9.)

In making this argument, Plaintiff references writings and alleges facts which do not appear in the Complaint. In analyzing Defendants' Motion, the Court is limited to allegations that appear in the Complaint or information in documents that the Court has deemed incorporated by reference. See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). A plaintiff may not amend their complaint by introducing new factual allegations in a response brief. Henderson v. McMurray, 611 F. Supp. 3d 1287, 1295 (N.D. Ala. 2020) (citing Miccosukee Tribe of Indians of Fla. v. United States, 716 F.3d 535, 559 (11th Cir. 2013)). As such, the Court will not consider any facts or writings referenced for the first time in Plaintiff's Sur-Reply. Moreover, where the terms of a contract are clear and unambiguous, "the court looks only to the contract to find the parties' intent." Forsyth Cnty. v. Waterscape Servs., LLC, 694 S.E.2d 102, 110 (Ga. Ct. App. 2010) (internal quotations omitted). The proper construction of a contract is a question of law decided by the Court. Id.; see also Kobatake v. E.I. DuPont De Nemours & Co., 162 F.3d 619, 624 (11th Cir. 1998) (under Georgia law, "a release or settlement agreement is a contract subject to

---

Plaintiff's claims because Balfour Beatty's delay in accepting those Applications is part of the basis of Plaintiff's requested damages and is directly relevant to several of Plaintiff's claims. (See generally doc. 1.) Further, the documents are undisputed as Plaintiff does not challenge their authenticity. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) ("'Undisputed' in this context means that the authenticity of the document is not challenged."). The Court thus incorporates these documents into its analysis.

construction by the court," but "no construction of the contract is permissible when the language employed by the parties is plain, unambiguous, and capable of only one reasonable interpretation") (internal quotations omitted) (alterations adopted).

Here, the executed waivers unambiguously release all claims that Plaintiff may have for work related to the Project through each given Release Period—including all claims for "extended or additional job costs and overhead" as well as "claims and demands arising from contended delays, disruptions or changes to the Work"—so long as Plaintiff receives payment in the amount requested in the corresponding payment application. (Doc. 9-2, p. 6; doc. 9-3, p. 6.) Plaintiff's claims for outstanding change orders, damaged panels, and "extended overhead including general conditions" through the Release Periods are thus plainly barred by the express terms of the waivers that accompanied Payment Applications 16 and 17. In other words, Plaintiff has unambiguously waived any such claim arising through February 28, 2025. (Doc. 9-3, p. 6.) Under the unambiguous terms of the waivers, the Court grants Defendants' Motion to the extent that Plaintiff seeks recovery for damages other than retainage arising before February 28, 2025.

However, it is not clear that Plaintiff has released *all* non-retainage claims that it may have. As noted above, the Waiver expressly states that its release becomes effective only upon Plaintiff's receipt of payment in the requested amount. (Doc. 1-1, p. 58.) Plaintiff alleges that it has not received payment for Payment Application 18 because of Balfour Beatty's bad faith refusal to pay, (doc. 1, pp. 5–11), and, as such, the Waiver submitted with Payment Application 18 has yet to become effective for any claims accruing after February 28, 2025. It is not clear either from the Complaint or the incorporated documents that all of Plaintiff's claims relating to change orders, panel storage and repair, or project extension fall

within the time period covered by the waivers that accompanied Payment Applications 16 and 17. Payment Application 18, submitted while Payment Application 17 was still pending, references "work performed through June 30, 2025." (Id. at p. 4.) There is thus the possibility that Plaintiff continued to work following Payment Application 17's Release Period and may have incurred more claims.[5] Moreover, the Complaint alleges that Balfour Beatty issued a partial payment towards Plaintiff's claims for change orders and/or panel repair and replacement after the approval of Payment Applications 16 and 17. (Id. at p. 6.) This suggests that the parties may have continued to negotiate Plaintiff's claims. There is thus the possibility that Plaintiff has claims that have not been effectively waived.

The face of the Complaint does not so unambiguously establish waiver of all of Plaintiff's non-retainage claims as to warrant dismissal under Rule 12(b)(6). The Complaint indicates Plaintiff has incurred at least some such damages after the period covered by the Waiver submitted with Payment Application 17. Defendants' Motion is thus **GRANTED** with respect to all non-retainage claims arising on or before February 28, 2025, but **DENIED** to the extent that Plaintiff has incurred additional damages outside these Periods.

## II. Plaintiff's Claim for Quantum Meruit (Count II)

Count II seeks to recover for the "reasonable value of [Plaintiff's] labor, materials, and services" furnished in connection with the Project which benefitted the Project and Balfour Beatty. (Doc. 1, pp. 11–14.) According to Plaintiff, Balfour Beatty has "failed and refused to pay Plaintiff" the reasonable value of its work despite receiving the benefit of that

[5] Defendants argue that Payment Application 18's request for retainage "is tantamount to a claim that Source Panel had completed its scope of work under the Subcontract prior to February 28, 2025." (Doc. 9-1, p. 7 n.5.) Given Plaintiff's reference to work performed through June 2025 though, the Court does not find that the Complaint and incorporated documents clearly establish that Plaintiff has waived all possible claims.

labor. (Id. at p. 12.) Plaintiff avers that "[t]o the extent it is determined . . . by this Court . . . that the [Subcontract] is invalid, unenforceable, or does not govern some or all of the work performed by [Plaintiff], then [Plaintiff] is entitled to recover in quantum meruit" to avoid the unjust enrichment of Balfour Beatty. (Id.)

To state a claim for quantum meruit here, Plaintiff must plead four essential elements: "(1) the performance of valuable services; (2) accepted by the recipient or at its request; (3) the failure to compensate the provider would be unjust; and (4) the provider expected compensation at the time services were rendered." Amend v. 485 Props., 627 S.E.2d 565, 567 (Ga. 2006) (citing Hollifield v. Monte Vista Biblical Gardens, Inc., 553 S.E.2d 662, 668 (Ga. Ct. App. 2001)). According to the Complaint, Plaintiff performed valuable cladding work for the Project with the expectation that it would be compensated according to an agreed-upon compensation scheme, and Balfour Beatty accepted this work. (See generally doc. 1.) The Complaint further alleges that Balfour Beatty's refusal to compensate Plaintiff is motivated by bad faith such that permitting Balfour Beatty to retain the benefit of Plaintiff's work without compensation would be unjust. (See id.) As such, Plaintiff has adequately pled all four elements of quantum meruit.

Defendants nevertheless contend that Plaintiff is barred from recovering under a theory of quantum meruit. (Doc. 9-1, pp. 7–8.) First, Defendants reassert their argument that "Plaintiff has waived any claim for damages with the exception of its retainage claim," claiming that "[t]he fact that Count II is a quasi-contract claim, rather than an express contract claim," does not change the result. (Id.) Defendants further urge that "[i]t is well-established that a party cannot recover in quantum meruit for work that is performed pursuant to the terms of an express contract," noting that "[h]ere, Plaintiff has alleged the existence of an

express contract" and seeks payment for "work under the Subcontract." (Id. at p. 8.) Defendants also argue that Plaintiff cannot recover its retainage claim as the retainage "does not reflect 'extra' or non-contract work" but is instead part of the contractual scope of work. (Id.)

Plaintiff responds that it is permitted to plead in the alternative at this stage of the litigation and may bring claims for both breach of contract and quantum meruit. (Doc. 33, p. 11.) Plaintiff further notes that Balfour Beatty denies being contractually obligated to pay Plaintiff's claims, "presenting the possibility that the claims may be recoverable under quantum meruit." (Id.) Additionally, Plaintiff contends that "the mere existence of a written contract is not a basis to grant a motion to dismiss" on a claim for quantum meruit. (Id. (citing Naga Hanuman Fish Packers v. Sivani Int'l LLC, No. 1:23-CV-2019, 2023 WL 8505750, at *5 (N.D. Ga. Oct. 20, 2023)).)

As an initial matter, the Court declines to dismiss Count II pursuant to Defendants' waiver arguments for the reasons outlined in the preceding Section. See Discussion Section I.B, supra. With regard to Defendants' argument that Plaintiff may not bring a quantum meruit claim alongside its breach of contract claim, Plaintiff is correct that it is entitled to plead in the alternative at this stage. "Indeed, Rule 8(d)(2) [of the Federal Rules of Civil Procedure] specifically permits the pleading of express contract and implied contract (or quantum meruit) claims as alternative theories for relief, although recovery on only one such theory is ultimately allowed." Medimport S.R.L. v. Cabreja, 929 F. Supp. 2d 1302, 1321 (S.D. Fla. 2013) (internal quotations omitted). That Plaintiff has alleged the existence of an express contract in Count I does not preclude it from alternatively pleading that it is entitled to recover on an implied contract theory in Count II, regardless of any internal inconsistency.

See Clark v. Aaron's, Inc., 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012) (plaintiff permitted to plead "alternative and inconsistent claims" for both breach of contract and unjust enrichment).[6] This is particularly true where Plaintiff has pled facts which indicate that Balfour Beatty departed from the terms of the Subcontract. See Hathaway Dev. Co. v. Advantage Fire Sprinkler Co., 659 S.E.2d 778, 782 (Ga. Ct. App. 2008) (plaintiff could recover for extra work performed outside the scope of the contract where defendant engaged in conduct which departed from the contract's terms). While Plaintiff may not recover under both Count I and Count II, it is entitled to plead both counts in the alternative, and the Court will not dismiss Count II on the basis that it is inconsistent with the claims in Count I. Defendants' Partial Motion to Dismiss is **DENIED** with respect to Count II. (Doc. 9.)

## III. Plaintiff's Claim for Violations of the Georgia Prompt Payment Act (Count IV)

Count IV alleges that Balfour Beatty violated the Georgia Prompt Payment Act, O.C.G.A. § 13-11-1, *et seq*. (Doc. 1, pp. 16–18.) According to Plaintiff, Balfour Beatty failed to timely pay Plaintiff for sums that were "undisputedly due and payable," failed to issue timely and proper written notice identifying any bona fide dispute as required by O.C.G.A. § 13-11-5, withheld payment for reasons unrelated to the value or quality of Plaintiff's work, and manipulated the Project billing software in order to improperly reject

---

[6] Defendants cite several cases which they contend establish Plaintiff's inability to recover in quantum meruit for work performed pursuant to an express contract. (Doc. 9-1, p. 8 (citing Joseph M. Still Burn Ctrs., Inc. v. AmFed Nat'l Ins. Co., 702 F. Supp. 2d 1371, 1376 (S.D. Ga. 2010); Anderson v. Golden, 569 F. Supp. 122, 142 (S.D. Ga. 1982); and Ballard Marine Constr., Inc. v. CDM Constructors, Inc., No. 4:17-cv-118, 2018 WL 3090393, at *2 (S.D. Ga. Feb. 7, 2018)).) Of these cases, the only one addressing a motion to dismiss at the pleading stage is Ballard Marine Construction, which merely states the unremarkable proposition that a plaintiff may not *recover* in quantum meruit for work falling within an express contract, not that a plaintiff may not *plead* both a claim for breach of an express contract and an alternative claim for quantum meruit. See 2018 WL 3090393, at *2. As such, these cases do not support the dismissal of Count II for failure to state a claim.

Plaintiff's pay applications. (Id. at pp. 17–18.) Plaintiff thus argues that it is entitled under the Act "to recover interest at the statutory rate of 1% per month on wrongfully withheld sums," along with attorney's fees. (Id. at p. 18.) Defendant avers that Count IV fails to state a claim as the Act does not apply and Plaintiff is instead limited to its contractual remedies. (Doc. 9-1, p. 9.)

The Prompt Payment Act ensures that contractors and subcontractors are timely compensated for their work. O.C.G.A. § 13-11-4. Under the terms of the Act, contractors are to be paid "within 15 days of receipt or the owner's representative or any payment request" while subcontractors are to be paid within ten days. Id. Relevant here is O.C.G.A. § 13-11-7, which imposes interest on late payments to contractors and subcontractors. Section 13-11-7 provides

> (a) Except as provided in Code Section 13-11-5, if a periodic or final payment to a contractor is delayed by more than 15 days or if a periodic or final payment to a subcontractor is delayed more than ten days after receipt of periodic or final payment by the contractor or subcontractor, the owner, contractor, or subcontractor, as the case may be, shall pay his or her contractor or subcontractor interest, beginning on the day following the due date, at the rate of 1 percent per month or a pro rata fraction thereof on the unpaid balance as may be due. However, no interest is due unless the person being charged interest has been notified of the provision of this Code section at the time the request for payment is made. Acceptance of progress payments or final payment shall release all claims for interest on said payments.
>
> (b) Nothing in this chapter shall prohibit owners, contractors, and subcontractors from agreeing by contract to rates of interest, payment periods, and contract and subcontract terms different from those stipulated in this Code section, and in this event, these contractual provisions shall control. In case of a willful breach of the contract provisions as to the time of payment, the interest rate specified in this Code section shall apply.

O.C.G.A. § 13-11-7.

Defendants argue that the terms of the Subcontract differ materially from the terms provided by the Act and that, per Section 13-11-7(b), the provisions of the Subcontract thus

govern. (Doc. 9-1, p. 9.) Specifically, Defendants assert that Section 13-11-7(a) of the Act "requires payment within fifteen (15) days of receipt of a periodic payment application," while the Subcontract instead requires payment "within ten (10) days after [Balfour Beatty's] receipt of payment from Owner for [Plaintiff's] Work (including changes in the Work paid by Owner)." (Id. at p. 9; see also doc. 1-1, p. 115.)

In its Sur-Reply, Plaintiff disputes that the Subcontract differs from the provisions of the Act. (Doc. 33, p. 12.) Plaintiff notes that "Section 13-11-7 imposes interest 'if a periodic or final payment to a subcontractor is delayed more than ten days after receipt of periodic or final payment by the contractor . . . .'" (Id.) According to Plaintiff, "[t]he Subcontract simply mirrors this language, requiring payment to [Plaintiff] within ten days of receipt of payment by [Balfour Beatty]." (Id.) The Court agrees with Plaintiff. By the express terms of Section 13-11-7(a), the 15-day payment window cited by Defendants applies to contractors and *not* subcontractors, who are instead required to be paid within ten days to avoid the imposition of interest. While Defendants further argue that the Act "does not tie payment of subcontractors to receipt of payment from the owner," (doc. 9-1, p. 9), the Act expressly states that subcontractors must satisfy all "conditions precedent to payment" for its terms to apply. O.C.G.A. § 13-11-4. As such, the Subcontract does not materially differ from the terms of the Act.

Plaintiff further argues that even if the Subcontract modified the requirements under the Act, "this singular modification would not somehow render [other Sections of] the Act inapplicable." (Doc. 33, p. 12.) Plaintiff is correct. The Eleventh Circuit has noted that while Section 13-11-7(b) "states that parties to a contract may agree to terms 'different from those stipulated in this Code *section*, and in this event, these contractual provisions shall

control,'" this language "falls under the heading 'Interest on Late Payments.'" Fatt Katt Enters., Inc. v. Rigsby Constr., Inc., 762 F. App'x 746, 749 (11th Cir. 2019). Accordingly, the Eleventh Circuit has concluded, the language in Section 13-11-7(b) permitting parties to agree by contract to different terms only applies in the context of interest on late payments under Section 13-11-7, "and does not apply to other sections in the Act." Id. This is relevant here as Plaintiff is seeking to not only recover the statutory interest rate on late payments, but also to recover attorney's fees pursuant to Section 13-11-8. (See doc. 1, p. 18.)

Lastly, Plaintiff argues that, as it has alleged a willful breach of the Subcontract, "the interest rate specified in [Section 13-11-7] shall apply." (Doc. 33, p. 13.) See also O.C.G.A. § 13-11-7(b) ("In case of a willful breach of the contract provisions as to the time of payment, the interest rate specified in this Code section shall apply."). Here, Plaintiff alleges that Balfour Beatty willfully breached the Subcontract by withholding payment in bad faith. (See doc. 1, pp. 3–11.) Thus, under the plain language of Section 13-11-7(b), the provisions of the Act apply. As such, Defendants' Motion is **DENIED** with respect to Count IV.

## IV. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count V)

Defendants argue that Count V fails to state a claim because it is impermissibly duplicative of Plaintiff's breach of contract claim in Count I. (Doc. 9-1, pp. 9–11.) Defendants contend that "[u]nder Georgia law, a breach of the duty of good faith and fair dealing is merely a sub-species of contractual breach, since 'every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement.'" (Id. at p. 9 (quoting Clark, 914 F. Supp. 2d at 1308 (alterations adopted)).) Defendants correctly note that "the duty of good faith is not a general, free-floating duty," but "must be tied to specific contractual provisions." (Id. at pp. 9–10); see also Am. Casual Dining, L.P. v. Moe's Sw.

Grill, L.L.C., 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) ("General allegations of breach of the implied duty of good faith and fair dealing not tied to a specific contract provision are not actionable."). Defendants aver that, consequently, a claim for "a breach of the covenant cannot be maintained where the allegations giving rise to [the] claim are duplicative of the allegations underpinning a plaintiff's claim for express breach of contract." (Doc. 9-1, p. 10.) As such, Defendants claim, "[w]here a claimant 're-asserts some of the same facts supporting a breach of contract and argues that those breaches also breached the implied duty of good faith and fair dealing,'" the good faith and fair dealing claim is impermissibly duplicative and subject to dismissal. (Id. (quoting AlphaStaff, Inc. v. Kronos Hotels, LLC, No. 1:08-CV-1695, 2008 WL 11336202, at *2 (N.D. Ga. Sep. 26, 2008) (alterations adopted)).)

The Court need not address the merits of this argument. As Defendants note in their Reply, (doc. 22, p. 10), Plaintiff did not respond to this argument in its Response. (See generally doc. 19.) Plaintiff also did not address this argument in its Sur-Reply. (See generally doc. 33.) "When an argument is raised upon [a] motion to dismiss that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned and subject to dismissal." Barnes v. AstraZeneca Pharms. LP, 253 F. Supp. 3d 1168, 1171 (N.D. Ga. 2017) (internal quotations omitted). Plaintiff has abandoned its claim for breach of the implied duty of good faith and fair dealing, and the Court **GRANTS** Defendants' Partial Motion to Dismiss with respect to Count V.

## CONCLUSION

For the reasons stated above, Defendants' Partial Motion to Dismiss, (doc. 9), is **GRANTED in part** and **DENIED in part**. As to Count I, Defendants' Motion is **GRANTED** as to all non-retainage claims arising on or before February 28, 2025, but

**DENIED** as to any claims arising after that date. Defendants' Motion is **DENIED** with respect to Counts II and IV. Defendants' Moton is **GRANTED** with respect to Count V.

**SO ORDERED** this 17th day of September, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA